UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

| | |
|---|---|
| GOORIN BROS., INC., <br><br> Plaintiff, <br><br> v. <br><br> THE INDIVIDUALS, CORPORATIONS, LIMITED LIABILITY COMPANIES, PARTNERSHIPS, AND UNINCORPORATED ASSOCIATIONS IDENTIFIED ON SCHEDULE A, <br><br> Defendants. | Case No.: 1:23-23405-Civ-Williams/Reid |

**REPORT AND RECOMMENDATION ON
PLAINTIFF'S MOTION FOR PRELIMINARY INJUNCTION**

This matter is before the Court on Plaintiff's Motion for Preliminary Injunction (the "Application"). [ECF No. 17]. United States District Court Judge Kathleen M. Williams referred the motion to me for a report and recommendation. [ECF No. 18].

Plaintiff Goorin Bros., Inc. moves for entry of a preliminary injunction against Defendants, the Individuals, Business Entities, and Unincorporated Associations identified on Schedule A hereto (collectively "Defendants"), and an entry of an order restraining the financial accounts used by Defendants, pursuant to 15 U.S.C. § 1116 and Fed. R. Civ. P. 65, and The All Writs Act, 28 U.S.C. § 1651(a).

For the following reasons, the Court **RECOMMENDS** that Plaintiff's Application be **GRANTED**. [ECF No. 17].

### I. Factual Background

Plaintiff Goorin Bros, Inc. is the owner of the following trademarks and copyright registrations (respectively, the "GOORIN BROS. Trademarks" and "GOORIN BROS.

1

Copyrights"), which are valid and registered on the Principal Register of the United States Patent and Trademark Office and The Copyright Office.

A list of the GOORIN BROS. Trademarks is included in the below chart:

| U.S. TM Reg. No. | Trademark | Registration Date |
|---|---|---|
| 3,338,516 | Castle Mark | Nov. 20, 2007 |
| 3,825,020 | GOORIN BROS. | Jul. 27, 2010 |
| 3,825,023 | GOORIN BROS. | Jul. 27, 2010 |
| 3,825,022 | GOORIN BROS. | Jul. 27, 2010 |
| 5,479,732 | Squirrel Mark | May 29, 2018 |
| 3,293.390 | GOORIN | Sep. 18, 2007 |
| 3,293.389 | GOORIN | Sep. 18, 2007 |
| 3,293,391 | Castle Mark | Sep. 18, 2007 |
| 3,293,392 | Castle Mark | Sep. 18, 2007 |

A list of the GOORIN BROS. Copyrights is included in the below chart:

| Copyright Reg. No. | Copyright | Registration Date |
|---|---|---|
| VA 2-012-751 | Beaver | Mar. 10, 2016 |
| VA 2-191-408 | Beaver | Apr. 5, 2019 |
| VA 2-012-524 | Black Sheep | Mar. 10, 2016 |
| VA 2-192-866 | Black Sheep | Apr. 5, 2019 |
| VA 2-192-815 | Bull | Apr. 5, 2019 |
| VA 2-192-861 | Cock | Apr. 5, 2019 |
| VA 2-012-525 | Cougar | Mar. 10, 2016 |
| VA 2-012-747 | Donkey Ass | Mar. 10, 2016 |
| VA 2-192-778 | Elephant | Apr. 5, 2019 |
| VA 2-192-730 | Fever | Apr. 5, 2019 |
| VA 2-192-732 | Floater | Apr. 5, 2019 |
| VA 2-192-729 | Foxy | Apr. 5, 2019 |
| VA 2-192-846 | Freedom | Apr. 5, 2019 |
| VA 2-192-752 | Gallo | Apr. 5, 2019 |
| VA 2-255-931 | GO-019538R Pig | Jun. 4, 2021 |
| VA 2-192-745 | Gorilla | Apr. 5, 2019 |
| VA 2-012-716 | Grizz | Mar. 10, 2016 |
| VA 2-012-660 | Honeywell | Mar. 10, 2016 |
| VA 2-192-850 | Horny | Apr. 5, 2019 |
| VA 2-012-663 | Howler | Mar. 10, 2016 |
| VA 2-186-472 | Killer | Nov. 22, 2019 |
| VA 2-187-971 | King Snake | Nov. 26, 2019 |
| VA 2-012-749 | Life of Leisure | Mar. 10, 2016 |
| VA 2-192-852 | Lone Wolf | Apr. 5, 2019 |
| VA 2-192-855 | Nuts | Apr. 5, 2019 |

| Copyright Reg. No. | Copyright | Registration Date |
|---|---|---|
| VA 2-192-762 | Peace | Apr. 5, 2019 |
| VA 2-186-476 | Peacock | Nov. 26, 2019 |
| VA 2-192-825 | Pecker | Apr. 5, 2019 |
| VA 2-265-492 | R1311 Cock Patch | Jun. 4, 2021 |
| VA 2-255-987 | R1314 Bird | Jun. 4, 2021 |
| VA 2-265-493 | R1316 Foxy | Jun. 4, 2021 |
| VA 2-265-312 | R1317 Beaver | Jun. 4, 2021 |
| VA 2-264-229 | R1318 Bitch Dog | Jun. 4, 2021 |
| VA 2-250-289 | R1334 Lion | Apr. 21, 2021 |
| VA 2-244-690 | R1336 Bear Lone Star | Mar. 25, 2021 |
| VA 2-193-876 | R1366 Cock Gray Leather | Jan. 9, 2020 |
| VA 2-255-926 | R1417 Billy Goat | Apr. 2, 2021 |
| VA 2-249-021 | R1418 Sitting Butch Bulldog | Apr. 2, 2021 |
| VA 2-264-537 | R1761 Buck Fever Leaping | Apr. 09, 2021 |
| VA 2-244-693 | R1766 Owl Hooters | Mar. 25, 2021 |
| VA 2-264-236 | R1829 Rack Deer | Jun. 4, 2021 |
| VA 2-255-934 | R1862 Pointer Dog | Jun. 4, 2021 |
| VA 2-255-985 | R1866 Cub Bear | Apr. 2, 2021 |
| VA 2-245-560 | R1876 Donkey "Bad" | Mar. 25, 2021 |
| VA 2-255-924 | R1890 Black Bear | Apr. 2, 2021 |
| VA 2-250-317 | R1895 Happy Penguin | Apr. 21, 2021 |
| VA 2-265-284 | R1909 Snap Gator | Jun. 4, 2021 |
| VA 2-255-984 | R1938 Butch Bulldog | Apr. 2, 2021 |
| VA 2-252-031 | R2003 Shark | Jan. 22, 2021 |
| VA 2-255-937 | R2006 Turkey | Jun. 4, 2021 |
| VA 2-248-829 | R2051 Fowl Duck | Apr. 2, 2021 |
| VA 2-255-986 | R2052 Dark Horse | Apr. 2, 2021 |
| VA 2-249-023 | R2057 High Bird | Apr. 9, 2021 |
| VA 2-244-692 | R2064 Bass | Mar. 25, 2021 |
| VA 2-255-909 | R2065 Trout | Jun. 4, 2021 |
| VA 2-247-836 | R2073 "Funky" Monkey | Jan. 22, 2021 |
| VA 2-237-012 | R2074 Baboon | Dec. 16, 2020 |
| VA 2-250-291 | R2092 Wild Baby Tiger | Apr. 21, 2021 |
| VA 2-240-504 | R2120 Lady Bug | Feb. 12, 2021 |
| VA 2-244-689 | R2121 Beast Lion | Mar. 25, 2021 |
| VA 2-255-935 | R2124 Weasel | Jun. 4, 2021 |
| VA 2-255-943 | R2125 Vulture | Jun. 4, 2021 |
| VA 2-249-026 | R2132 Black Swan | Apr. 9, 2021 |
| VA 2-255-939 | R2134 Warewolf | Jun. 4, 2021 |
| VA 2-237-003 | R2147 Silver Tiger | Feb. 1, 2021 |
| VA 2-255-933 | R2148 Wise Owl | Jun. 4, 2021 |
| VA 2-240-511 | R2150 Dark Stallion | Feb. 12, 2021 |
| VA 2-250-314 | R2151 Dark Rooster | Apr. 21, 2021 |
| VA 2-250-367 | R2153 Jack Ass | Apr. 21, 2021 |

| Copyright Reg. No. | Copyright | Registration Date |
|---|---|---|
| VA 2-252-029 | R2154 "Hunter" Coyote | Jan. 22, 2021 |
| VA 2-250-014 | R2155 Moose Rack | Apr. 30, 2021 |
| VA 2-240-506 | R2156 Buffalo | Feb. 12, 2021 |
| VA 2-249-022 | R2157 Good Boy Dog | Apr. 9, 2021 |
| VA 2-237-013 | R2158 Bouncer | Dec. 16, 2020 |
| VA 2-250-377 | R2163 Pit bull | Apr. 21, 2021 |
| VA 2-255-906 | R2164 Weiner | Jun. 4, 2021 |
| VA 2-250-018 | R2166 Tough Rottweiler | Apr. 30, 2021 |
| VA 2-240-508 | R2168 Baked | Feb. 12, 2021 |
| VA 2-255-989 | R2169 Chill Turtle | Apr. 2, 2021 |
| VA 2-252-034 | R2178 "Flirt" Bird | Jan. 22, 2021 |
| VA 2-250-292 | R2181 Little Rooster | Apr. 21, 2021 |
| VA 2-250-365 | R2184 Lion Red Border | Apr. 21, 2021 |
| VA 2-255-905 | R2185 Stinger | Jun. 4, 2021 |
| VA 2-250-019 | R2185 Stinger Stingray | Apr. 30, 2021 |
| VA 2-250-012 | R2195 Player Possom | Apr. 30, 2021 |
| VA 2-247-838 | R2199 "Champion" Horse | Jan. 22, 2021 |
| VA 2-247-837 | R2201 Alacran | Jan. 22, 2021 |
| VA 2-240-509 | R2203 Toro | Feb. 12, 2021 |
| VA 2-250-318 | R2204 Pantera | Apr. 21, 2021 |
| VA 2-250-696 | R2205 Jaguar | Apr. 21, 2021 |
| VA 2-250-694 | R2211 Perico | Apr. 21, 2021 |
| VA 2-252-042 | R2212 Aguila | Jan. 22, 2021 |
| VA 2-249-829 | R2213 Tucan | Apr. 21, 2021 |
| VA 2-250-695 | R3001 Mama Bear | Apr. 21, 2021 |
| VA 2-250-016 | R3008 Sassy Dog | Apr. 30, 2021 |
| VA 2-249-832 | R3009 Fierce Leopard | Apr 21, 2021 |
| VA 2-240-514 | R3010 Black Sheep | Feb. 12, 2021 |
| VA 2-249-835 | R3018 Mammoth | Apr. 21, 2021 |
| VA 2-250-380 | R3019 Sabertooth | Apr. 21, 2021 |
| VA 2-242-449 | R3023 Frisky Whisky | Mar. 16, 2021 |
| VA 2-242-448 | R3026 Curious Cat | Mar. 16, 2021 |
| VA 2-242-450 | R3029 Bad Luck Cat | Mar. 16, 2021 |
| VA 2-249-836 | R3054 Eagle | Apr. 21, 2021 |
| VA 2-242-451 | R3065 Frenchie | Mar. 16, 2021 |
| VA 2-242-444 | R3071 Spider | Mar. 16, 2021 |
| VA 2-242-445 | R3072 Viper | Mar. 16, 2021 |
| VA 2-242-446 | R3074 Moth | Mar. 16, 2021 |
| VA 2-242-447 | R3075 Crocodile | Mar. 16, 2021 |
| VA 2-242-452 | R3081 Koala | Mar. 16, 2021 |
| VA 2-252-032 | R3108 "Exotic" Bird | Jan. 22, 2021 |
| VA 2-242-440 | R3113 Blue Exotic Tiger | Mar. 16, 2021 |
| VA 2-294-526 | R3192 Alpha Dog | Mar. 4, 2022 |
| VA 2-294-518 | R3194 Hard Buffalo WHI | Mar. 4, 2022 |

| Copyright Reg. No. | Copyright | Registration Date |
|---|---|---|
| VA 2-294-500 | R3199 Snow Leopard BLK | Mar. 4, 2022 |
| VA 2-012-523 | Rooster | Mar. 10, 2016 |
| VA 2-012-748 | San Francisco | Mar. 10, 2016 |
| VA 2-012-657 | Squirrel Master Animal Farm – a collection of Goorin hats with embroidered patches depicting various animals along with a short phrase | Mar. 10, 2016 |
| VA 2-192-832 | Tiger | Apr. 5, 2019 |
| VA 2-192-767 | Toucan Do It | Apr. 5, 2019 |
| VA 2-192-792 | Tuna | Apr. 5, 2019 |
| VA 2-192-800 | Wise Ass | Apr. 5, 2019 |
| VA 2-255-929 | Wise Ass Owl | Jun. 4, 2021 |
| VA 2-192-820 | Woody Wood | Apr. 5, 2019 |
| VA 2-012-735 | X the Owl | Mar. 10, 2016 |

The Defendants, through the various Internet based e-commerce stores operating under the seller identities identified on Schedule A hereto (the "Seller IDs"), have advertised, promoted, offered for sale, or sold goods bearing and/or using what the Plaintiff has determined to be counterfeits, infringements, reproductions, or colorable imitations of the GOORIN BROS. Trademarks and GOORIN BROS. Copyrights. *See* Declaration of Ben Goorin ("Goorin Decl."), ¶¶ 9-17.

The Defendants are not now, nor have they ever been, authorized or licensed to use, reproduce, or make counterfeits, reproductions, or colorable imitations of the GOORIN BROS. Trademarks or GOORIN BROS. Copyrights. *See* Goorin Decl., ¶ 17.

The Plaintiff investigated the promotion and sale of counterfeit and infringing versions of the Plaintiff's branded and copyright protected products by the Defendants. *See* Goorin Decl., ¶¶ 12-15. Plaintiff accessed each of the e-commerce stores operating under the Defendants' Seller IDs, initiated the ordering process for the purchase of a product from each of the Seller IDs bearing counterfeits of the GOORIN BROS. Trademarks and Copyrights at issue in this action, and completed a checkout page requesting each product to be shipped to an address in the Southern District of Florida. *See id*. The Plaintiff conducted a review and visually inspected the GOORIN

5

BROS. branded and copyrighted items and the items for which orders were initiated by Plaintiff's third-party investigator via the Seller IDs, and determined the products were non-genuine, unauthorized versions of the Plaintiff's products. *See id*.

## II.     Legal Standard

In order to obtain a preliminary injunction, a party must demonstrate "(1) [there is] a substantial likelihood of success on the merits; (2) that irreparable injury will be suffered if the relief is not granted; (3) that the threatened injury outweighs the harm the relief would inflict on the non-movant; and (4) that the entry of the relief would serve the public interest." *Schiavo ex. rel Schindler v. Schiavo*, 403 F.3d 1223, 1225–26 (11th Cir. 2005); *see also Levi Strauss & Co. v. Sunrise Int'l. Trading Inc.*, 51 F.3d 982, 985 (11th Cir. 1995) (applying the test to a preliminary injunction in a Lanham Act case).

## III.    Conclusions of Law

The declarations Plaintiff submitted in support of its Application support the following conclusions of law:

A.     Plaintiff has a strong probability of proving at trial that consumers are likely to be confused by Defendants' advertisement, promotion, sale, offer for sale, and/or distribution of goods bearing and/or using counterfeits, reproductions, or colorable imitations of Plaintiff's Trademarks and/or Copyrights, and that the products Defendants are selling and promoting for sale are copies of Plaintiff's respective products that bear and/or use copies of Plaintiff's respective Trademarks and/or Copyrights.

B.     Because of the infringement of Plaintiff's Trademarks and Copyrights, Plaintiff is likely to suffer immediate and irreparable injury if a preliminary injunction is not granted. The following specific facts, as set forth in Plaintiff's Complaint, Application, and accompanying

declarations, demonstrate that immediate and irreparable loss, damage, and injury will result to Plaintiff and to consumers before Defendants can be heard in opposition unless Plaintiff's request for relief is granted:

        1.        Defendants own or control e-commerce stores and commercial Internet websites operating under their respective seller identification names and domain names which advertise, promote, offer for sale, and sell products bearing and/or using counterfeit and infringing trademarks and copyrights in violation of Plaintiff's respective rights;

        2.        There is good cause to believe that more counterfeit and infringing products bearing and/or using Plaintiff's trademarks and copyrights will appear in the marketplace; that consumers are likely to be misled, confused, and/or disappointed by the quality of these products; and that Plaintiff may suffer loss of sales for its genuine products; and

C.        The balance of potential harm to Defendants in restraining their trade in counterfeit and infringing branded goods if a preliminary injunction is issued is far outweighed by the potential harm to Plaintiff, its reputation, and its goodwill as manufacturers and distributors of quality products if such relief is not issued.

D.        The public interest favors issuance of the preliminary injunction to protect Plaintiff's trademark and copyright interests and protects the public from being defrauded by the palming off of counterfeit goods as Plaintiff's genuine goods.

E.        Under 15 U.S.C. § 1117(a), Plaintiff may be entitled to recover, as an equitable remedy, the illegal profits gained through Defendants' distribution and sales of goods bearing and/or using counterfeits and infringements of Plaintiff's Trademarks and Copyrights. *See Reebok Int'l, Ltd. v. Marnatech Enters., Inc.*, 970 F.2d 552, 559 (9th Cir. 1992) (quoting *Fuller Brush Prods. Co. v. Fuller Brush Co.*, 299 F.2d 772, 777 (7th Cir. 1962) ("An accounting of profits under

§ 1117(a) is not synonymous with an award of monetary damages: '[a]n accounting for profits . . . is an equitable remedy subject to the principles of equity.'")).

F.  Requesting equitable relief "invokes the district court's inherent equitable powers to order preliminary relief, including an asset freeze, in order to assure the availability of permanent relief." *Levi Strauss & Co.*, 51 F.3d at 987 (11th Cir. 1995) (*citing Federal Trade Commission v. United States Oil & Gas Corp.*, 748 F.2d 1431, 1433-34 (11th Cir. 1984)).

G.  In light of the inherently deceptive nature of the counterfeiting business, and the likelihood that Defendants have violated federal trademark and copyright laws, Plaintiff has good reason to believe Defendants will hide or transfer their ill-gotten assets beyond the jurisdiction of this Court unless those assets are restrained.

Upon review of Plaintiff's Complaint, Application, and supporting evidentiary submissions, it is hereby **RECOMMENDED** that Plaintiff's Application be **GRANTED**, according to the terms set forth below:

## PRELIMINARY INJUNCTION

(1)  Each Defendant, its officers, directors, employees, agents, subsidiaries, distributors, and all persons in active concert or participation with any Defendant having notice of this Order, are hereby temporarily restrained as follows:

a.  Using Plaintiff's GOORIN BROS. Trademarks and/or GOORIN BROS. Copyrights, or any reproductions, counterfeit copies, or colorable imitations thereof in any manner in connection with the distribution, marketing, advertising, offering for sale, or sale of any product that is not a genuine GOORIN BROS. product or not authorized by Plaintiff to be sold in connection with Plaintiff's GOORIN BROS. Trademarks and/or GOORIN BROS. Copyrights;

b.  Passing off, inducing, or enabling others to sell or pass off any product as a

genuine HUGO BOSS product, or any other product produced by Plaintiff, that is not Plaintiff's product or not produced under the authorization, control, or supervision of Plaintiff and approved by Plaintiff for sale under the Plaintiff's GOORIN BROS. Trademarks and/or GOORIN BROS. Copyrights;

   c.  Committing any acts calculated to cause consumers to believe that Defendants' products are those sold under the authorization, control or supervision of Plaintiff, or are sponsored by, approved by, or otherwise connected with Plaintiff;

   d.  Further infringing the Plaintiff's GOORIN BROS. Trademarks, GOORIN BROS. Copyrights and/or damaging Plaintiff's goodwill;

   e.  Otherwise competing unfairly with Plaintiff in any manner;

   f.  Shipping, delivering, holding for sale, transferring or otherwise moving, storing, distributing, returning, or otherwise disposing of, in any manner, products or inventory not manufactured by or for Plaintiff, nor authorized by Plaintiff to be sold or offered for sale, and which bear any of Plaintiff's GOORIN BROS. Trademarks and/or GOORIN BROS. Copyrights, or any reproductions, counterfeit copies, or colorable imitations thereof;

   g.  Using, linking to, transferring, selling, exercising control over, or otherwise owning the Online Marketplace Accounts, the Defendant Domain Names, or any other domain name or online marketplace account that is being used to sell or is the means by which Defendants could continue to sell counterfeit products bearing, using, or infringing on the GOORIN BROS. Trademarks and/or GOORIN BROS. Copyrights; and

   h.  Operating and/or hosting websites at the Defendant Domain Names and any other domain names registered or operated by Defendants that are involved with the distribution, marketing, advertising, offering for sale, or sale of any product bearing, using, or infringing on

Plaintiff's GOORIN BROS. Trademarks, GOORIN BROS. Copyrights and/or any reproductions, counterfeit copies, or colorable imitations thereof that is not a genuine GOORIN BROS. product or not authorized by Plaintiff to be sold in connection with Plaintiff's GOORIN BROS. Trademarks and/or GOORIN BROS. Copyrights.

(2)  Each Defendant, within fourteen (14) days after receiving notice of this Order, shall serve upon Plaintiff a written report under oath providing: (a) their true name and physical address, (b) all websites and online marketplace accounts on any platform that they own and/or operate (c) their financial accounts, including all PayPal, Inc. ("PayPal"), Alipay, Wish, Walmart, Joom, Alibaba, Ant Financial Services Group ("Ant Financial"), Amazon Pay, DHgate, eBay, Payoneer, Inc. ("Payoneer"), PingPong Global Solutions, Inc. ("PingPong"), Coinbase Global, Inc. ("Coinbase"), LianLian Global t/as LL Pay U.S., LLC ("LianLian"), AllPay Limited ("AllPay"), Union Mobile Financial Technology Co., Ltd ("Union Mobile"), World First UK Ltd. ("World First"), Paxful, Inc. ("Paxful"), Shopify, Inc. ("Shopify"), Stripe, Inc. ("Stripe"), OFX Group ("OFX"), Sellers Funding Corp ("SellersFund"), their financial accounts, including by way of example all Amazon, PayPal, Payoneer, LianLian, AllPay, PingPong, Coinbase, Union Mobile, and eBay accounts, and (d) the steps taken by each Defendant to comply with paragraph 1, a through h, above.

(3)  The domain name registries for the Defendant Domain Names, including, but not limited to, VeriSign, Inc., Neustar, Inc., Afilias Limited, CentralNic, Nominet, and the Public Interest Registry, within three (3) business days of receipt of this Order or prior to expiration of this Order, whichever date shall occur first, shall disable the Defendant Domain Names and make them inactive and untransferable until further ordered by this Court.

(4)  Those with actual notice of this Order, including any online marketplaces such as

the Online Marketplaces, social media platforms, Facebook, YouTube, LinkedIn, Twitter, Internet search engines such as Google, Bing, and Yahoo, web hosts for the Defendant Domain Names, and domain name registrars, shall within three (3) business days of receipt of this Order:

      a.    disable and cease providing services for any accounts through which Defendants engage in the sale of counterfeit and infringing goods using the GOORIN BROS. Trademarks, including any accounts associated with the Defendants listed on the Schedule A to the [Proposed] Preliminary Injunction Order;

      b.    disable and cease displaying any advertisements used by or associated with Defendants in connection with the sale of counterfeit and infringing goods using the GOORIN BROS. Trademarks; and

      c.    take all steps necessary to prevent links to the Defendant Domain Names identified on the Schedule A to the Preliminary Injunction Order from displaying in search results, including, but not limited to, removing links to the Defendant Domain Names from any search index.

(5)    Defendants and any third party with actual notice of this Order who is providing services for any of the Defendants, or in connection with any of Defendants' websites at the Defendant Domain Names or other websites operated by Defendants, including, without limitation, any online marketplace platforms such as the Online Marketplace Platforms, Internet Service Providers ("ISP"), web hosts, back-end service providers, web designers, sponsored search engine or ad-word providers, banks, merchant account providers, including PayPal, Alipay, Wish, WalMart, Joom, Alibaba, Ant Financial, Amazon Pay, DHgate, eBay, Payoneer, PingPong, Coinbase, LianLian, AllPay, Union Mobile, World First, Paxful, Shopify, Stripe, OFX, SellersFund, third party processors and other payment processing service providers, shippers, and

domain name registrars (collectively, the "Third Party Providers") shall, within five (5) business days after receipt of such notice, provide to Plaintiff expedited discovery—based on the identifying information provided by Plaintiff's counsel including but not limited to, account IDs, legal names, and associated email addresses— including copies of all documents and records in such person's or entity's possession or control relating to:

      a.    the identities and locations of Defendants, their agents, servants, employees, confederates, attorneys, and any persons acting in concert or participation with them, including all known contact information;

      b.    the nature of Defendants' operations and all associated sales and financial information, including, without limitation, identifying information associated with the Online Marketplace Accounts, the Defendant Domain Names, and Defendants' financial accounts, as well as providing a full accounting of Defendants' sales and listing history related to their respective Online Marketplace accounts and Defendant Domain Names;

      c.    Defendants' websites and/or any Online Marketplace Accounts;

      d.    the Defendant Domain Names or any domain name registered by Defendants; and

      e.    any financial accounts owned or controlled by Defendants, including their agents, servants, employees, confederates, attorneys, and any persons acting in concert or participation with them, including such accounts residing with or under the control of any banks, savings and loan associations, payment processors or other financial institutions, including, without limitation, without limitation, PayPal, Alipay, Wish, WalMart, Joom, Alibaba, Ant Financial, Amazon Pay, DHgate, eBay, Payoneer, PingPong, Coinbase, LianLian, AllPay, Union Mobile, World First, Paxful, Shopify, Stripe, OFX, SellersFund or other merchant account

providers, payment providers, third party processors, and credit card associations (e.g., MasterCard and VISA).

(6) Defendants and any persons in active concert or participation with them who have actual notice of this Order shall be temporarily restrained and enjoined from transferring or disposing of any money or other of Defendants' assets until further ordered by this Court.

(7) Western Union shall, within five (5) business days of receipt of this Order, block any Western Union money transfers and funds from being received by Defendants until further ordered by this Court.

(8) The Marketplace Platforms shall, within five (5) business days of receipt of this Order, for any Defendant or any of Defendants' Online Marketplace Accounts or websites:

    a. locate all accounts and funds connected and/or related to Defendants, Defendants' Online Marketplace Accounts or Defendants' websites, including, but not limited to, any Amazon, PayPal, Payoneer, LianLian, AllPay, PingPong, Coinbase, Union Mobile, and eBay accounts connected and/or related to the information listed in Schedule A to the Complaint; and

    b. Restrain and enjoin any such accounts or funds from transferring or disposing of any money or other of Defendants' assets until further ordered by this Court.

(9) The Financial Institutions, any banks, savings and loan associations, payment processors, or other financial institutions, for any Defendant or any of Defendants' Online Marketplace Accounts or websites, shall within five (5) business days of receipt of this Order:

    a. locate all accounts and funds connected and/or related to Defendants, Defendants' Online Marketplace Accounts or Defendants' websites, including, but not limited to, any accounts connected and/or related to the information listed in Schedule A to this Order; and

    b. restrain and enjoin any such accounts or funds from transferring or

disposing of any money or other of Defendants' assets until further ordered by this Court.

(10) Plaintiff may provide notice of these proceedings to Defendants by electronically publishing a link to the Complaint, this Order and other relevant documents on a website or by sending an e-mail to all e-mail addresses identified by Plaintiff and any e-mail addresses provided for Defendants by third parties that includes a link to said website. The combination of providing notice via electronic publication or e-mail, along with any notice that Defendants receive from domain name registrars and payment processors, shall constitute notice reasonably calculated under all circumstances to apprise Defendants of the pendency of the action and afford them the opportunity to present their objections.

(11) Any Defendants that are subject to this Order may appear and move to dissolve or modify the Order on two days' notice to Plaintiff or on shorter notice as set by this Court.

(12) The one hundred thousand dollars ($100,000.00) bond posted by Plaintiff shall remain with the Court until a final disposition of this case or until this Preliminary Injunction is terminated.

## **OBJECTIONS**

Pursuant to 28 U.S.C. § 636(b)(1) and Local Magistrate Rule 4(a), Plaintiff has THREE (3) days from the date of this Report and Recommendation to serve and file written objections, if any, with the District Judge.1 *See generally Jeffrey S. by Ernest S. v. State Bd. of Educ. of State of Ga.*, 896 F.2d 507 (11th Cir. 1990). Failure to timely file objections will bar a de novo determination by the district judge of anything in this Report and shall constitute a waiver of a party's "right to challenge on appeal the District Court's order based on unobjected-to factual and legal conclusions." 11th Cir. R. 3-1; *see also Harrigan v. Metro-Dade Police Dep't Station #4*, 977 F.3d 1185, 1191–92 (11th Cir. 2020); 28 U.S.C. § 636(b)(1)(C).

**SIGNED** this 6th day of November, 2023.

_____
**HONORABLE LISETTE M. REID**
**UNITED STATES MAGISTRATE JUDGE**

Copies provided to:
Counsel of Record